United States District Court
Southern District of Texas

**ENTERED**

June 23, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Cayla Wheaton, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 4:25-cv-04335 |
| Spring Independent School District, | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND RECOMMENDATION

Defendant Spring Independent School District (the "District") moved to dismiss this employment suit under Fed. R. Civ. P. 12(b)(6).  Dkt. 12.  After carefully reviewing the motion, Plaintiff Cayla Wheaton's response, Dkt. 16, the District's reply, Dkt. 17, the pleadings, and the applicable law, it is recommended that Wheaton's claims be dismissed with prejudice.

## Background

The following facts are taken as true.  Wheaton is an African American female.  Dkt. 7 at 2.  She has worked for the District since January 2016, initially as a special education teacher, and later as a mental health behavior specialist.  *Id.* at 3.

On April 29, 2023, Wheaton filed a grievance with the District.  *Id.*  She alleges that the grievance "oppos[ed] disability discrimination against her co-

worker Mayre Garcia" and reported non-ADA-compliant procedures. *Id*. But the grievance itself largely complains of Wheaton's personal conflicts with a colleague (Tiffany Chaney), and with Wheaton's supervisor (Crystal Collins), who allegedly overlooked Wheaton and accused her of "creating cliques in the workplace ...." *See* Dkt. 12 at 20-23. Its sole mention of Mayre Garcia accuses Chaney of going to Garcia's home and "reliev[ing] her of her duties without informing" Wheaton, causing Garcia to "blame[]" their department and "threaten[ ] to get an attorney." *Id*. at 20.

Wheaton alleges the grievance triggered a series of retaliatory acts. She applied for short term disability leave to undergo lipoma surgery. Dkt. 7 at 5. But approval was delayed, which she maintains was retaliatory. *See id*. Wheaton also pleaded that the retaliation affected her daughters. *See id*. at 4.

Wheaton filed a second grievance in May 2024. *Id*. at 5. According to the complaint, the second grievance "object[ed] to the District's failure to implement" ADA-compliant "procedures for processing and accommodating mental health disabilities" and reported retaliation by Collins. *Id*. But that grievance actually discussed Wheaton's ongoing conflict with Collins, largely concerning an incident where Collins mocked Wheaton's attire during a presentation. *See* Dkt. 12 at 24, 26. The grievance also requested that Wheaton's Family Medical Leave Act ("FMLA") paperwork be signed so that

2

she could take leave for surgery and complained that the FMLA evaluator "called seeking information about [Wheaton's] diagnoses." *See id.* at 25, 27.

Wheaton took her leave and returned in August 2024. *See* Dkt. 7 at 6. She met with the assistant superintendent of human resources, Tameka McKeithan, "to follow up on" the two grievances. *Id.* In that meeting, McKeithan told Wheaton that her grievances had been "leaked" to her co-workers, which allegedly spawned more retaliation. *Id.* The District investigated Wheaton's grievances in October 2024, which included a meeting between Wheaton and the District's legal counsel. *See id.* at 6-7. Wheaton then filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 7.

After receiving a right-to-sue letter, Wheaton filed this suit, initially claiming gender discrimination, hostile work environment, ADA violations, and retaliation. Dkt. 1. But her subsequent amended complaint abandoned all causes of action except for her ADA retaliation claim. Dkt. 7.

The District moved to dismiss the amended complaint suit under Rule 12(b)(6). Dkt. 12. Wheaton responded, Dkt. 16, and the District replied, Dkt. 17. The motion is now ripe for resolution.

## Legal Standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a

3

Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

## Analysis

Moving to dismiss, the District argues that (1) Wheaton failed to exhaust claims predating January 24, 2024; (2) her grievances are not protected activity under the ADA; and (3) she cannot recover punitive damages. Dkt. 12. In response, Wheaton conceded that any retaliatory actions occurring prior to

4

January 24, 2024 "are not actionable" because of the ADA's exhaustion requirement. *See* Dkt. 16 at 1. And she admits that "punitive damages are not available." *Id.* at 2. But Wheaton maintains that she has sufficiently alleged ADA-protected activity, as required to support a retaliation claim.

A *prima facie* retaliation claim requires "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 (5th Cir. 2025) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). The District contends that the grievances identified in the complaint do not constitute "protected activity" because they do not concern conduct that the ADA protects. *See* Dkt. 12 at 10-14. The Court agrees. For the reasons below, Wheaton's allegations are not actionable under the ADA.

## I.   <u>The grievances are properly considered at this stage.</u>

A threshold question is whether this Court can consider certain key documents attached to the District's motion to dismiss. Those documents are copies of Wheaton's April 2023 and May 2024 workplace grievances that underlie her retaliation claim. *See* Dkt. 12 at 18-23 ("2023 Grievance"), 24-28 ("2024 Grievance"). The District contends that both grievances should be considered when determining if Wheaton has plausibly stated her claim. *See id.* at 15 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99

(5th Cir. 2000); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Wheaton disagrees, claiming that the exhibits should be disregarded. *See* Dkt. 16 at 3-5.

Generally, if "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Nevertheless, courts can consider documents attached to a motion to dismiss if they are referenced in the complaint and central to the plaintiff's claim. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering contracts that were not attached to, but were referenced in, the complaints). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).

Wheaton's grievances meet that threshold. Her ADA claim hinges on the grievances, asserting that the District retaliated against her for submitting them. *See, e.g.*, Dkt. 7 at 3 (alleging retaliation for 2023 Grievance), at 6 (asserting Wheaton felt threatened after co-workers learned of grievances; *see also* Dkt. 16 at 6-8 (identifying the grievances and related investigations as the

protected activities at issue). The grievances are thus indispensable to whether she engaged in protected activity—an element of Wheaton's retaliation case. *See Strife*, 138 F.4th at 249. That makes the grievances proper to consider at this stage. *See Norman v. Beaumont Indep. Sch. Dist.*, 2025 WL 1179983, at *3 (E.D. Tex. Mar. 19, 2025) (Facebook post constituting the alleged protected activity was "central" to retaliation claim), *aff'd*, 2026 WL 1180537 (5th Cir. Apr. 30, 2026); *see also Hoyt v. Am. Nat'l Ins. Co.*, 2021 WL 2823449, at *9 (N.D. Tex. July 6, 2021) (written complaint about discrimination was "central" to retaliation claim).

Instead, Wheaton contends that the District's copies of the grievances are "untrustworthy" and "dubious." Dkt. 16 at 3, 9. A court can decline to consider a document whose authenticity is disputed. *Cf. Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (considering documents when conducting 12(b)(6) analysis because "[n]o party questions" their authenticity); *see Ryan, LLC v. Inspired Dev., LLC*, 2013 WL 6159288, at *10 (N.D. Tex. Nov. 25, 2013) (collecting cases where only "undisputably authentic" documents were considered on motions to dismiss). According to Wheaton, "at least" the 2024 Grievance exhibit "is fraudulent" because page 28 of that document "was never part of" her grievance. *See id.* at 3-4. That disputed page appears to be a separate letter sent by Wheaton. Dkt. 12 at 28. But when pressed on this issue at the initial conference, Wheaton's counsel admitted

7

that—aside from their mistaken inclusion of one extra page—the grievances provided by the District are identical to the ones that Wheaton gave him.

The correspondence on the single, extra page (Dkt. 12 at 28) has no bearing on the issues raised in the motion to dismiss.   Because the other portions of the documents are undisputedly authentic, they are properly reviewed to determine whether Wheaton's ADA claim survives dismissal.

## II.   <u>Wheaton has not engaged in protected activity under the ADA.</u>

Wheaton contends that she engaged in protected activity by (1) filing the 2023 Grievance, (2) filing the 2024 Grievance, (3) meeting with assistant superintendent for human resources McKeithan about those grievances, and (4) meeting with the District's outside counsel regarding the investigation of those grievances.   *See* Dkt. 16 at 6-8 (citing Dkt. 7 at ¶¶ 14, 22, 25, 27-28). While the District acknowledges that "[f]iling an employee grievance … can constituted protected activity," it argues that neither the 2023 nor 2024 Grievance qualifies as activity protected by the ADA.   *See* Dkt. 12 at 10-14.

Engaging in protected activity under the ADA means "oppos[ing] any act or practice made unlawful by [the ADA]." *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 886 (5th Cir. 2020) (quoting *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008)); 42 U.S.C. § 12203(a).   "To satisfy this requirement, [Wheaton] must show that [she] had a 'reasonable belief that the employer was engaged in unlawful employment practices' under the ADA."

*Besser*, 834 F. App'x at 886 (quoting *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 313 (5th Cir. 2016) (per curiam)).  The ADA does "not protect opposition to all forms of unscrupulous conduct."  *Brown v. United Parcel Service, Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010).

Wheaton pleaded that her 2023 Grievance "oppos[ed] disability discrimination against her co-worker Mayre Garcia" by her supervisor Collins and reported ADA compliance issues.  Dkt. 7 at 3.  And she describes the 2024 Grievance as "objecting to the District's failure to implement procedures for processing and accommodating mental health disabilities … and objecting to the ongoing retaliation …."  *Id.* at 5.  "While it is true that we must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document" that is appropriately considered at the Rule 12(b)(6) stage.  *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (quoting *Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974) (rejecting plaintiff's allegation that she filed an EEOC charge when the record showed that no such charge existed).

Wheaton's conclusory characterization of the grievances flatly contradicts the grievances themselves.  The 2023 Grievance describes a series of conflicts between Wheaton, her colleague Chaney, and supervisor Collins—

9

none of which have anything to do with disability discrimination. *See* Dkt. 12 at 18-23. For example, Wheaton complained that Collins twice overlooked her for a promotion *without* suggesting that it was because of any disability. *See id.* at 20. The lack of any connection to disability negates classifying it as protected activity. *See Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015) (per curiam) ("[W]hen employees make complaints about harassment without connecting the employment practices to their disabilities, these complaints do not constitute protected activity.").

Wheaton also pleaded that the 2023 Grievance reported disability discrimination against Mayre Garcia. *See* Dkt. 7 at 3. But the grievance says no such thing. It merely complains that Tiffany Chaney, a co-worker, circumvented Wheaton by relieving Garcia of her duties without telling Wheaton, causing Garcia to suffer "despair" and to threaten legal action. *See* Dkt. 12 at 20. Those accusations cannot reasonably be construed as opposing disability discrimination or reporting ADA violations.

Wheaton's allegations about the 2024 Grievance likewise bear no resemblance to the grievance itself. According to the complaint, the 2024 Grievance "object[ed] to the District's failure to implement procedures for processing and accommodating mental health disabilities." Dkt. 7 at 5. Yet the actual grievance complains that Collins had criticized Wheaton for conduct unrelated to any disability, including for insufficient communication,

10

unprofessional attire, and introducing a student intern to a school principal. *See* Dkt. 12 at 24-27. The grievance also states that Collins made unsubstantiated accusations that Wheaton failed to work certain hours, failed to respond to Wheaton's request for certain training, and "overstepp[ed] into [Wheaton's] parenting" by complaining baselessly about Wheaton's activities at her daughter's school. *See id.* Those disputes are unconnected to any disability and are not ADA-protected activity. *See Gordon*, 622 F. App'x at 431.

In the same grievance, Wheaton also complained about delays in processing her FMLA request and questions asked by an unnamed evaluator about Wheaton's diagnosis. *See* Dkt. 12 at 25, 27. That is not protected activity either. *See St. John*, 299 F. App'x at 309 (complaints about disclosing medical information were "not protected activity"); *Simonton v. Hou. Methodist Continuing Care Hosp.*, 2025 WL 1747023, at *9 (S.D. Tex. June 9, 2025) ("Neither obtaining FMLA leave nor complaining about discrimination or harassment regarding the FMLA is a protected activity under the ADA."), *adopted by* 2025 WL 1745129 (S.D. Tex. June 24, 2025).

In response to the motion to dismiss, Wheaton merely cites the allegations concerning her August and October 2024 meetings with human resources and the District's counsel. Dkt. 16 at 7-8 (citing Dkt. 7 ¶¶ 25, 27). But those meetings were directly related to the 2023 and 2024 Grievances. *See* Dkt. 7 at 6 (Wheaton met with HR "to follow up on her two outstanding

grievances"), 6-7 (when "the District finally got around to investigating [Wheaton's] grievances" she met with its counsel "regarding [her] complaints"). Because those grievances had no discernible link to any act or practice that the ADA protects, meetings that addressed such non-protected activity could not constitute protected activity either. Wheaton's further, vague assertion that she met with the District's counsel "regarding [her] complaints about the District's past discrimination and inadequate procedures for processing and accommodating mental health disabilities" is too conclusory to satisfy her pleading burden.

Nor can the deficiencies in pleading be cured by discovery, which Wheaton requests. *See* Dkt. 16 at 6, 9. As the District correctly observes, *see* Dkt. 17 at 4, Wheaton has personal knowledge about the issues she raised with the District. Thus, the vagueness of Wheaton's allegations cannot mask the lack of plausible basis for her ADA retaliation claim. This suit should be dismissed with prejudice.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Spring Independent School District's motion to dismiss (Dkt. 12) be **GRANTED**, and that Plaintiff Cayla Wheaton's claims be **DISMISSED WITH PREJUDICE** for failure to state a claim.

12

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 23, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge